## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Gorham Paper and Tissue, LLC, *et al.*, | Case No. 20-12814 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: February 16, 2021 at 4:00 p.m.**<br>**Hearing Date: March 16, 2021 at 11:00 a.m.** |

## FIRST AND FINAL FEE APPLICATION OF B. RILEY SECURITIES AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM NOVEMBER 4, 2020 THROUGH DECEMBER 31, 2020

| | |
|---|---|
| Name of Applicant: | **B. Riley Securities** |
| Authorized to Provide Professional Services to: | **The Debtors and Debtors-in-Possession** |
| Date of Retention: | **December 14, 2020, effective as of November 4, 2020** |
| Final Period for Which Compensation and Reimbursement are Sought: | **November 4, 2020 – December 31, 2020** |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | **$800,000.000** |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | **$539.67** |
| This is a: | **First and Final Application** |

---

[1] The last four digits of Gorham Paper and Tissue, LLC's federal taxpayer identification number are 6533.  See 11 U.S.C. § 342(c)(1).  The last four digits of White Mountain Tissue, LLC's federal taxpayer identification number are 0078.  See id.  The principal place of business for Gorham Paper and Tissue, LLC and White Mountain Tissue, LLC is 72 Cascade Flats, Gorham, New Hampshire 03581.

## SUMMARY OF SERVICES RENDERED BY B. RILEY SECURITIES

### SERVICES BY INDIVIDUAL[2]

| Professional | Position | Hours |
|---|---|---|
| Matthew Spain | Senior Managing Director | 22.0 |
| Dominic Riley | Associate | 68.5 |
| Alexandra Shaffer | Associate | 68.0 |
| | **Total**: | **158.5** |

### EXPENSE SUMMARY

**Sum of ExpenseAmount**

| Employee | ExpenseDate | ExpenseType | Description | | | Total |
|---|---|---|---|---|---|---|
| Matt Spain | 2020-02-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 28.81 |
| | 2020-02-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 6.25 |
| | 2020-03-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 22.44 |
| | 2020-03-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 5.55 |
| | 2020-04-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 16.98 |
| | 2020-04-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 6.24 |
| | 2020-05-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 17.20 |
| | 2020-05-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 7.13 |
| | 2020-06-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 19.75 |
| | 2020-06-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 7.13 |
| | 2020-07-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 27.88 |
| | 2020-07-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 6.25 |
| | 2020-08-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 17.32 |
| | 2020-08-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 9.99 |
| | 2020-09-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 26.20 |
| | 2020-09-29 | Deals-Communications/Mkt Data | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 9.99 |
| | 2020-10-15 | Deals-Communications/Mkt Data | APPLE.COM/BILL | CUPERTINO | CA | 24.02 |
| | 2020-10-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 29.20 |
| | 2020-10-29 | Deals-Auto | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 16.64 |
| | 2020-11-15 | Deals-Business Promotion | APPLE.COM/BILL | CUPERTINO | CA | 9.99 |
| | 2020-11-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 51.85 |
| | 2020-11-29 | Deals-Air/Rail | HTTP://WWW.GOGOAIR.C | 877-350-0038 | IL | 8.32 |
| | 2020-12-15 | Deals-Business Promotion | APPLE.COM/BILL | CUPERTINO | CA | 10.00 |
| | 2020-12-18 | Deals-Communications/Mkt Data | VZW APOCC | 800-922-0204 | FL | 116.29 |
| **Grand Total** | | | | | | **501.42** |

Call Charges - Not on the expense system yet $ 38.25

**Total Expenses** $ 539.67

[2] Does not include B. Riley employees who provided administrative support to the Debtors.

76300684.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Gorham Paper and Tissue, LLC, *et al.*, | Case No. 20-12814 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: February 16, 2021 at 4:00 p.m.**<br>**Hearing Date: March 16, 2021 at 11:00 a.m.** |

## FIRST AND FINAL FEE APPLICATION OF B. RILEY SECURITIES AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM NOVEMBER 4, 2020 THROUGH DECEMBER 31, 2020

B. Riley Securities ("B. Riley"), financial advisor and investment banker to the above-captioned debtors and debtors in possession (the "Debtors"), files this first and final fee application (the "Application") pursuant to §§ 328 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting final approval and allowance of compensation for services rendered and reimbursement of expenses for the period from November 4, 2020 through and including December 31, 2020 (the "Final Application Period"). In support of this Application, B. Riley respectfully represents as follows:

---

[1] The last four digits of Gorham Paper and Tissue, LLC's federal taxpayer identification number are 6533. See 11 U.S.C. § 342(c)(1). The last four digits of White Mountain Tissue, LLC's federal taxpayer identification number are 0078. See id. The principal place of business for Gorham Paper and Tissue, LLC and White Mountain Tissue, LLC is 72 Cascade Flats, Gorham, New Hampshire 03581.

1

76300684.2

## SUMMARY

1.      By this Application, B. Riley seeks final allowance of compensation in the amount of **$800,000.00** and actual and necessary expenses in the amount of **$539.67**, for a total requested allowance of **$800,539.67** for the Final Application Period.

2.      Pursuant to Local Bankruptcy Rule 2016-2(g) this Application is supported by the Certification of Matthew Spain, which is attached hereto as **Exhibit B**.

3.      The report of tasks and time performed by B. Riley professionals during the Final Application Period is set forth hereto as **Exhibit C**.

4.      A summary detailing the expenses incurred during the Final Application Period by B. Riley is set forth hereto as **Exhibit D**.

## JURISDICTION

5.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are §§ 327, 328(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

6.      On November 4, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The factual background regarding the Debtors, including their business

2

operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Richard Arnold in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13], which is incorporated herein by reference.  From the Petition Date through to the consummation of the sale of substantially all of the Debtors' assets on December 31, 2020, the Debtors continued in the management and operation of their businesses and properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  The Debtors continue to manage their remaining assets after the sale.

7.      On November 10, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "Committee").

### RETENTION OF R. RILEY AND THE MARKETING AND SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSET SALE

8.      On the Petition Date, the Debtors filed an application with the Court [Docket No. 14] for an order authorizing them to retain and employ B. Riley as their financial advisor and investment banker, effective as of the Petition Date.  On December 14, 2020, the Court entered an order [Docket No. 179] (the "Retention Order") authorizing the retention of B. Riley in accordance with the terms of the Retention Order, pursuant to § 328(a) of the Bankruptcy Code.

9.      Given its role as investment banker and financial advisor, the Retention Order also modified the time-keeping requirements applicable to B. Riley in the Chapter 11 Cases:

> In light of the services to be provided by B. Riley and the compensation structure provided for in the B. Riley Application, B. Riley and its professionals shall be excused from: (i) the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2 and the United States Trustee Fee Guidelines; and (ii) conforming with a schedule of hourly rates for its professionals.  Instead, B. Riley shall maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of services in the cases.  B. Riley shall maintain records (in summary format) of the services rendered to the Debtors, including summary descriptions of those services

3

and the approximate time expended in providing those services, tracked in half-hour increments, rather than in the tenth-of-an-hour increments required of other retained professionals. B. Riley shall present such records to this Court in its fee application(s). B. Riley is not required to keep time records on a "project category" basis or to provide or conform to any schedule of hourly rates.

[Retention Order, ¶ 6.]

10. On December 18, 2020, the Court entered its Order [Docket No. 196] (the "Sale Order") authorizing the sale of substantially all of the Debtors' assets (the "Sale") to Gorham Acquisition, LLC (the "Purchaser") pursuant to the terms of the Sale Order and the Asset Purchase Agreement (the "APA") between the Debtors and the Purchaser. The Sale closed on December 31, 2020. Pursuant to the APA and Sale Order, the Purchaser provided consideration for the Sale through the payment of **$7,501,800.85** in cash (inclusive of the Purchaser's **$1,000,000.00** deposit) plus a credit bid of debtor-in-possession financing in the amount of approximately **$1,570,000.00** and the assumption of approximately **$4,600,000.00** in liabilities (including the Debtors' obligations to Bank of New Hampshire).

11. In accordance with the terms of the Engagement Letter (as defined below and all subject to the Retention Order), the Debtors made a prepetition retainer payment to B. Riley in the amount of **$50,000.00** (the "Retainer") and further agreed to compensate B. Riley, in addition to reimbursement for actual and necessary expenses, as follows:

(a) In the event that: (i) a Sale Transaction is consummated prior to the termination of B. Riley's engagement hereunder; or (ii) the Debtors, prior to the termination of B. Riley's engagement hereunder or within 12 months following the termination of B. Riley's engagement hereunder, sends or receives a proposal or enters into an agreement with respect to a potential Sale Transaction and such Sale Transaction is subsequently consummated, a fee in cash (the "Transaction Fee"), equal to the greater of $1.0 million or 2.0% of the Aggregate Transaction Value paid in cash concurrently with the closing of the Sale Transaction[.]

12. The Aggregate Transaction Value of the sale was approximately, **$13,600,000.00**. Accordingly, because 2% of the Aggregate Transaction Value was less than **$1,000,000.00**, the

4

Transaction Fee due to B. Riley under the Engagement Letter would be **$1,000,000.00** (**$50,000.00** of which was previously paid through the Retainer).

## THE REVISED TRANSACTION FEE AND THE ZOHAR III, LIMITED CARVE-OUT

13.    Notwithstanding the Transaction Fee under the Engagement Letter, B. Riley has agreed to accept a 20% reduction from the Transaction Fee, reducing the actual amount sought by B. Riley in this Fee Application to **$800,000.00** (the "Revised Transaction Fee"), plus reasonable, actual expenses.  Further, both before and after the Sale closing, the Debtors have been working with the Committee and Zohar III, Limited ("Zohar III") to negotiate a settlement that, among other things, would resolve certain challenges the Committee may have in relation to Zohar III and would involve Zohar III releasing a certain amount of funds back to the Debtors that Zohar III received from the Sale proceeds, to be used by the Debtors to fund various expenses.  The Debtors anticipate filing a motion pursuant to Bankruptcy Rule 9019 in the upcoming days seeking Court approval of that compromise and related relief.  Accordingly, if the Zohar III compromise is approved, B. Riley's approved compensation will not be funded by property of the estates, but rather from Zohar III's Sale proceeds that are currently being held by the administrative agent after closing.  See, e.g., World Health Alternatives, Inc., 344 B.R. 291, 299 (Bankr. D. Del. 2006) (explaining that "an ordinary carve out of the senior creditors' liens for the junior claimants' benefit . . . does not offend the absolute priority rule or the Bankruptcy Code's distribution scheme because the property belongs to the secured creditor—not the estate"); In re SPM Mfg. Corp., 984 F.2d 1305, 1313-14 (1st Cir. 1993) (explaining that once proceeds of a § 363 sale are distributed to secured creditors in satisfaction of their liens, that money becomes the property of the creditor, not the estate, and there "is nothing in the Code forbidding [the creditor] to have voluntarily paid part of these monies to some or all of the general, unsecured creditors").

5

## SUMMARY OF SERVICED RENDERED

14.     Pursuant to the Engagement Letter, B. Riley has been employed by the Debtors since February 2020 in order to, among other things, provide investment banking advisory services relating to the marketing and sale of all or substantially all of the Debtors' assets (or such other forms as a transaction may have taken).  The terms and conditions of B. Riley's engagement in this case, which are set forth in and controlled by the Retention Order, are based upon B. Riley's engagement letter dated as of February 11, 2020 (the "Engagement Letter"), a copy of which was attached as **Exhibit 2** to the *Application of Debtors for Entry of an Order, Pursuant to Sections 327 and 328 of the Bankruptcy Code, Authorizing the Employment of B. Riley Securities as Financial Advisor and Investment Banker for the Debtors Effective as of the Petition Date* [Docket No. 14].

15.     During the Final Application Period, the following professionals at B. Riley performed substantive services for the Debtors:

| Professional | Position | Hours |
|---|---|---|
| Matthew Spain | Senior Managing Director | 22.0 |
| Dominic Riley | Associate | 68.5 |
| Alexandra Shaffer | Associate | 68.0 |
| | **Total**: | **158.5** |

16.     Pursuant to the Engagement Letter, a significant portion of B. Riley's services to the Debtors occurred in the lead up to the Bankruptcy Case.  **Accordingly, the postpetition hours identified in the above chart do not fully reflect all of the time and services provided by B. Riley as part of B. Riley's broader retention by the Debtors.**

17.     In particular, following execution of the Engagement Letter, B. Riley expended significant efforts in the months prior to the Petition Date marketing the Debtors' assets for sale. B. Riley worked closely with the Debtors to set up and manage the data room for the transaction,

6

which was accessed by numerous potential buyers that signed non-disclosure agreements.  B. Riley's marketing process also included significant mailings, industry research, and calls to targeted, industry specific, potential buyers that B. Riley believed might be interested in discussing a potential purchase of some or all of the Debtors' assets.  Prior to the Petition Date, B. Riley: (a) contacted 208 potential bidders; (b) sent form non-disclosure agreements to 138 parties; and (c) executed non-disclosure agreements with 71 prospective buyers.  After receiving indications of interest from several potential buyers that signed non-disclosure agreements, B. Riley engaged in advanced discussions regarding a potential sale transaction for some or all of the Debtors' assets with not less than eight (8) potential buyers over the four (4) months leading up to the Petition Date.  B. Riley's pre-petition marketing efforts also enabled the Debtors to identify the Purchaser prior to the Petition Date, and the Purchaser also served as the Debtors' postpetition lender, which provided funds to finance the Chapter 11 Cases through closing.

18.    During the Final Application Period, B. Riley's work on behalf of the Debtors included the following services, which represented a continuation of B. Riley's prepetition efforts, and which were performed by B. Riley in accordance with the *Order (I) Approving Bid Procedures in Connection With the Potential Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, (V) Approving Bid Protections, (VI) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VII) Granting Related Relief* [Docket No. 112] (the "Bid Procedures Order"):

(i)    ***Marketing the Debtors' Assets for Sale to Third Parties***: B. Riley conducted a comprehensive marketing and sale process of the Debtors' assets, which included the following actions:

a)    B. Riley pursued a broad marketing campaign on behalf of the Debtors consistent with the Bid Procedures Order.  B. Riley drafted

7

marketing materials and contacted potentially interested parties. Following the Petition Date and before the Bid Procedures Order was entered, B. Riley executed non-disclosure agreements with 17 additional interested parties. After the Bid Procedures Order, B. Riley sent an "Information Package" to its list of "Contact Parties" that was comprised of: (a) a cover letter; (b) a copy of the Bid Procedures; and (c) a copy of the Stalking Horse Agreement. This Information Package was provided to 252 potential buyers. B. Riley and the Debtors also engaged in advanced discussions with 6 potential buyers after the Petition Date, and the Debtors hosted parties from 3 interested buyers at their facilities in New Hampshire for site tours as part of the marketing process during the Chapter 11 Cases. During the Chapter 11 Cases, the Debtors engaged with at least 5 serious potential buyers for the assets, all of which were facilitated by B. Riley's marketing efforts.

b)      B. Riley worked closely with the Debtors, their management, and the Debtors' other professionals in formulating the bidding procedures for the proposed sale of the Debtors' assets, which were approved by this Court through the Bid Procedures Order. B. Riley also worked with those same parties postpetition to evaluate and strategize about potential bidders, and in support of ongoing negotiations and closing issues with the Purchaser.

c)      On November 18, 2020, the Court conducted the sale hearing, and the Court entered the Sale Order approving the Sale that same day. The Sale successfully closed on December 31, 2020.

(ii)     ***Attendance at Court Hearings and Related Support***: B. Riley professionals attended various Bankruptcy Court hearings regarding first-day motions, bid procedures, and sale approval. Importantly, the declarations and proffer of B. Riley's testimony regarding the sale process provided the Court with the factual bases on which it approved the Bid Procedures Order and Sale Order.

15.      Pursuant to the Retention Order, B. Riley is excused from complying with the information requirements contained in Local Bankruptcy Rule 2016-2(d).

## REQUEST FOR FINAL APPROVAL OF FEES AND EXPENSES

16.      By this Application, B. Riley requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting final approval and allowance of all fees and expenses incurred during the Final Application Period in the amounts of **$800,000.00** for the

8

Revised Transaction Fee and **$539.67** for reimbursement of expenses. During the Final Application Period, B. Riley performed necessary services for the Debtors and their estates. In addition, the out-of-pocket disbursements for which reimbursement is sought were actual, reasonable and necessary costs: (i) incurred while representing the Debtors; and (ii) of preserving the value of the Debtors' estates.

17.     Section 328(a) of the Bankruptcy Code provides that, with the Court's approval, a professional may be employed to provide services to the estate "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). After approving a professional's compensation terms under § 328(a), a court may allow different compensation only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of" entry. 11 U.S.C § 328(a). Congress intended § 328(a) to alleviate the uncertainty surrounding the compensation of professionals retained in bankruptcy, whose fees would otherwise be subject to the court's discretion after the fact. See In re Washington Mut., Inc., No. 08-12229 (MFW), 2018 WL 704361, at *3-4 (Bankr. D. Del. Feb. 2, 2018. Thus, to determine if the agreement was improvidently approved, the Court must focus on developments occurring after the order's entry that were impossible to foresee. See id. (citing cases).[2]

18.     For the reasons set forth herein and the exhibits attached hereto, this Court should approve the Revised Transaction Fee and expense reimbursement to B. Riley because no developments have occurred that were not capable of being anticipated at the time of the Retention Order. See 11 U.S.C. § 328(a). Further, to the extent applicable (including in light of the Zohar

---

[2] As set forth in the Retention Order, the United States Trustee retained the right to object to the compensation and expenses to be paid to B. Riley based on the reasonableness standard provided for in § 330 of the Bankruptcy Code.

9

III carve-out), the Revised Transaction Fee satisfies the reasonableness standard of § 330 given, among other reasons, the significant benefit to the estates and creditors from B. Riley's services. See id. § 330(a)(3)(A)-(F) (listing facts for Court to consider in determining reasonableness).

19.    The Debtors were given an opportunity to review this Fee Application and the amounts requested, and the Debtors support the requested relief.

## NO PRIOR REQUEST

20.    No prior application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, B. Riley respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting:

(a)    final allowance of B. Riley's Revised Transaction Fee of **$800,000.00**;

(b)    final allowance of the actual and necessary out-of-pocket expenses of **$539.67** in accordance with the Retention Order; and

(c)    such additional and further relief as the Court may deem proper.

Dated: January 26, 2021                                    /s/ Matthew Spain
                                                                      By: Matthew Spain
                                                                      Its: Senior Managing Director

10